A. FINKENBERG'S SONS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27230. Promulgated December 10, 1951.

*Benjamin Mahler, Esq.*, for the petitioner.

*Joseph F. Lawless, Esq.*, and *Charles Greenspan, Esq.*, for the respondent.

978

OPINION.

BLACK, *Judge:* Three issues are presented in this proceeding.

### *Issue 1.*

On the principal issue the respondent contests the petitioner's tax treatment of the thrift club plan on the following two alternative

grounds: The deduction of $22,780.30 "Cost of Thrift Sales" as an ordinary and necessary business expense of 1944 was improper since it should have been deducted in prior years, or the transfer during taxable year of the $22,780.30 credit balance of "Thrift Accounts Receivable" directly to surplus should have been included as taxable income. Petitioner argues that the expenses were properly deferred until 1944 and that the income from the thrift plan was income in prior years, not in 1944.

Petitioner's initial contention is that the error of respondent in the deficiency notice precludes the Court from considering the deductibility of the Cost of Thrift Sales as an expense, the sole question as described in the deficiency notice being the omission of income in 1944. In the deficiency notice as an adjustment to net income under the caption of "Unallowable deductions and additional income" is "(b) Cost of Thrift Sales $22,780.30." The item referred to is clearly a deduction since petitioner in its accounting systems always collected thrift club expenses in the account called Cost of Thrift Sales. In addition to this fact, petitioner's income tax return for 1944 is in evidence and it shows that petitioner in computing the amount of its net income, took as a deduction: "Cost of thrift sales, $22,920.30." The effect of the adjustment which respondent has made in his deficiency notice is to disallow $22,780.30 of this $22,920.30 claimed deduction.

However, the Commissioner explained the $22,780.30 adjustment as follows: "(b) This represents the amount of profit on sales omitted from taxable income." An additional ambiguous fact is that the figure $22,780.30 in the deficiency notice is the exact amount transferred to surplus without being accounted for as income. The exact amount of prepaid expenses which were paid and accrued in prior years but written off in 1944 is $22,860.30.

The form of the notice informed the taxpayer that the expense deduction would be challenged. It was challenged by the Commissioner at the hearing of this proceeding. Except for the explanation advanced and the discrepancy in the figures, the disallowance of a Cost of Thrift Sales item clearly involves a deduction. The Commissioner's determination of a deficiency must not be disapproved because it is predicated upon erroneous grounds stated in the deficiency notice if it otherwise appears to be correct. *Standard Oil Co.*, 43 B. T. A. 973, 978, affd. 129 F. 2d 363, certiorari denied 317 U. S. 688, rehearing denied 319 U. S. 784; *Houston Lighting & Power Co.*, 34 B. T. A. 745, 750; *John I. Chipley*, 25 B. T. A. 1103, 1106.

Both the questions of omitted income and improper deduction arise out of the same facts of the thrift plan. Petitioner's original petition

clearly recognized the deduction issue as raised,[1] but the amended petition is framed on the theory that the deduction issue has not been raised.[2] In his opening statement counsel for the respondent disputed without any ambiguity the deduction which petitioner had taken on its return for 1944.[3]

The following factors present here are relevant to the determination of this question. The expense deduction was discussed fully in the briefs and the taxpayer had full opportunity and did produce evidence. *Hay* v. *Commissioner* (C. A. 4), 145 F. 2d 1001, 1007, affirming 2 T. C. 460, certiorari denied 324 U. S. 863, rehearing denied 324 U. S. 891. Petitioner has not been prejudiced or harmed in any way. *Commissioner* v. *Stewart* (C. A. 6), 186 F. 2d 239; *Helvering* v. *Continental Oil Co.* (C. A. D. C.), 68 F. 2d 750, certiorari denied 292 U. S. 627.

Notwithstanding petitioner's contention that the deduction issue is not involved in the case, we conclude that the deduction of $22,780.30 of the Cost of Thrift Sales account was properly presented as an issue here.

Petitioner calls the items sold for $10 under the original thrift plan contracts "gifts." Its theory is that the expenditures incurred were properly deferred in prior years and deductible in 1944 on the theory that the benefits were realized then because of subsequent purchases. When income was received in prior years from the original $10 contracts, petitioner accounted for that income as a liability on the hypothesis that the $10 would be used as a credit on a subsequent purchase. However, in 1944 the accumulated liabilities were transferred directly to surplus on the theory that the income was properly attributable to years prior to 1944.

---

[1] The original petition provided:

"4 (b) The Commissioner erred in his contention that the Cost of Thrift Sales of $22,780.30 is not an ordinary and necessary expense deductible in the year ended December 31, 1944."

"5 (b) Item of $22,780.30 represents expenditures in connection with promoting sales of the petitioner and although such expenditures were incurred in prior years they were deferred until such time as when the sales emanating from such promotion became actual sales. This event occurred in 1944 and therefore such expenditure is to be and is a deduction from income in that year."

[2] In its amended petition, the petitioner substituted the following:

"(b) The Commissioner erred in holding that petitioner was taxable in 1944 on $22,780.30 'amount of profit on sales omitted from taxable income.'

"(c) He erred in holding that the sum of $22,780.30 is includible in the income for the year 1944. He erred in not holding that if it is at all taxable it is so taxable in a year prior to 1944."

[3] In his opening statement, counsel for respondent said:

"And in 1944 the petitioner then decided to claim a deduction of $22,700-odd as a sort of a portion of expense incurred in operating and conducting that so-called thrift campaign or canvass.

"The respondent's contention is that any deduction that they had should have been taken at the time that it was incurred, and that the income ought to have been reported at that time, and it is for that reason we are here."

As a matter of fact there was a direct relation between amounts expended and income on the $10 original contracts each year the thrift plan was in operation. A substantial part of the thrift club expense produced immediate results which are impossible to segregate from prospective results. Petitioner's own evidence shows that there was an insignificant number of new subsequent purchases by thrift customers in 1944, and the 1944 cash collections on all subsequent installment purchases by thrift customers has not been put in evidence. Furthermore the expenses written off in 1944 were incurred in prior years in which petitioner had no taxable income. Even when customers indicated no further interest in the thrift plan and there was no reasonable belief that a subsequent purchase would be made, the expenses incident to those accounts were still deferred. The expenditures in the promotion of the thrift plan campaign were reduced very much after 1941, being negligible in 1944.

To call such a transaction a "gift" is a misnomer. It is our opinion that the transaction was a routine installment sale. To the extent that costs exceeded receipts on initial $10 thrift contracts, the expense was promotional, very similar in form to advertising costs or the acquisition of good will.

Section 23 (a), I. R. C., provides for the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year. * * *" More specifically section 43, I. R. C., provides:

SEC. 43. PERIOD FOR WHICH DEDUCTIONS AND CREDITS TAKEN.
The deductions and credits * * * provided for in this chapter shall be taken for the taxable year in which "paid or accrued" or "paid or incurred," dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * *

Even though petitioner, an installment dealer, was permitted to account for installment income in the years realized under section 44 (a), I. R. C., the expenses in connection with that income still must be deducted in the year in which the items are "paid or accrued." *Blum's, Inc.*, 7 B. T. A. 737, 763–765; *Franc Furniture*, 1 B. T. A. 420. Regulations 111, section 29.44–1 provides:

* * * Deductible items are not to be allocated to the years in which the profits from the sales of a particular year are to be returned as income, but must be deducted for the taxable year in which the items are "paid or incurred" or "paid or accrued," as provided by sections 43 and 48. * * *

The fact that deductions exceed gross income on the installment basis cannot be treated as a deferred expense. *J. B. Bradford Piano Co.*, 15 B. T. A. 1045.

Advertising and promotional expenses cannot be charged to future years as deferred charges nor by amortization of a capital in-

vestment where the taxpayer fails to show that the future benefits can be determined precisely and are not of indefinite duration. *X-Pando Corporation*, 7 T. C. 48; *F. E. Booth Co.*, 21 B. T. A. 148; *Colonial Ice Cream Co.*, 7 B. T. A. 154. Cases cited by petitioner involve insurance premiums, mortgage renewal fees, and bond discounts in which the benefits in future years are definite and ascertainable mathematically. Expenses incurred and paid in prior years are not deductible in later years though incidental to earnings in later years. *J. Noble Hayes*, 7 B. T. A. 936.

We sustain the respondent's disallowance of the Cost of Thrift Sales deduction. It is unnecessary to discuss respondent's alternative argument about the omission of income.

## Issue 2.

The Commissioner disallowed a General Expenses deduction of $1,900, which petitioner claims for buyers' traveling expenses. The grounds stated by the Commissioner in his deficiency notice as reasons for his disallowance of this $1,900 were: "(a) This represents amounts deducted as general expense for which substantiation was not submitted."

We think the evidence which petitioner submitted at the hearing substantiates to a reasonable degree that it expended $1,900 as traveling expenses in 1944 incurred in having three of its employees attend furniture marts held in Chicago and High Point, North Carolina. The facts with reference to these expenditures are detailed in our findings of fact and need not be repeated here. The Commissioner's action in disallowing deduction of this $1,900 is reversed. See *Sommerfeld Machine Co.*, 15 T. C. 453; *Arthur N. Blum*, 11 T. C. 101.

## Issue 3.

Petitioner contends that it is entitled to a deduction in 1944 under section 122 (b) (2), I. R. C., by reason of a net operating loss of $14,783.18 sustained in 1942. We find that petitioner sustained no net operating loss in 1942 because it was not entitled to a deduction claimed on the 1942 return of $106,462.12 for bad debts. While it is true that petitioner's return for 1942 showed a loss of $14,783.18, it in reality had no loss for this year.

The only evidence submitted by petitioner with reference to its bad debt loss was the witness Schoolman, an independent accountant in 1944 and later petitioner's president, who testified that the loans represented advances over a period of years to the Finkenbergs who were officers and shareholders. There was no amplification of this general and vague statement.

Petitioner has not shown the presence here of the following three factors all of which must be complied with before a taxpayer is entitled to a deduction for bad debts under section 23 (k) (1). (1) Initially the shareholder officers must have made "an unconditional obligation to pay" the corporation, *Allen-Bradley Co.* v. *Commissioner* (C. A. 7) 112 F. 2d 333; *John Feist & Sons Co.*, 11 B. T. A. 138. (2) When a valid debt exists the corporation must exhaust all reasonable means of collecting that debt. *Allen-Bradley Co.* v. *Commissioner, supra,* p. 335; *Nathan H. Gordon Corporation*, 2 T. C. 571, 583. (3) Since section 23 (k) (1) allows deductions for debts "which become worthless within the taxable year," the debt must have had some value at the beginning of the taxable year. *Grant B. Shipley*, 17 T. C. 740.

Petitioner's contention that it is entitled to a net loss carry-over from 1942 is not sustained.

*Decision will be entered under Rule 50.*

