### APPEAL OF UNITED STATES TOOL CO.

Docket No. 4650.    Submitted October 13, 1925.    Decided January 28, 1926.

*Bernard Knollenberg, Esq.*, for the taxpayer.
*M. N. Fisher* and *J. T. Dortch, Esqs.*, for the Commissioner.

#### Before KORNER.

This appeal is from the determination by the Commissioner of a deficiency in income and profits tax for the year 1920 in the amount of $1,799.99. The portion of the deficiency here in controversy is approximately $1,300, and grows out of the disallowance of a deduction taken by the taxpayer on account of a bad debt.

#### FINDINGS OF FACT.

1. The taxpayer is a New Jersey corporation, with its principal office at Ampere, and is engaged in the manufacture of tools. Some

time prior to 1920 the International Money Machine Co. opened an account with the taxpayer and contracted for a special line of tools needed by them in bringing out a new adding machine. That company agreed to discount all bills in 10 days. Under this agreement the taxpayer began the manufacture and delivery of the tools contracted for.

2. For a while all went well and the International Money Machine Co. paid its bills promptly. Finally the checks failed to come and Squarey, the secretary, treasurer, and general manager (now president, treasurer, and general manager) began an investigation of the affairs of the taxpayer's debtor. The debtor's account then stood at $4,031.26. In September, or early in October, 1920, he went to the plant of the debtor to see its president. The latter declined to see him. Squarey found the debtor's shop closed down and interviewed one of the mechanics there, who told him, in the vernacular of the trade, that the International Co. "was ready to take the gas pipe," which, being interpreted, means that the company was "broke." Squarey knew the adding machine business thoroughly and knew the kind of machine which the debtor company was trying to put out. From his experience and knowledge he concluded that the taxpayer's account with that company was absolutely worthless.

3. During the ensuing weeks the taxpayer made further effort to collect its account, but without success, and then took the matter up with its attorney. The latter, after investigation, advised the taxpayer that the debt was worthless and would not yield the expense attached to the effort to collect it. He further advised that the account should be charged off as worthless. During the course of his inquiries, taxpayer's attorney had caused investigation to be made of the debtor's affairs and had had the matter taken up with the debtor's attorney, looking to a settlement on some basis, but without avail. The investigation disclosed that the debtor was on the verge of bankruptcy. In fact, it did go into bankruptcy on January 12, 1921.

4. The final advice received by the taxpayer as to the debtor's condition was about December 24, 1920. Soon thereafter, the four directors of the taxpayer, who were also the four stockholders, held a meeting and were unanimously of the opinion that the debt was worthless and should be charged off forthwith.

5. The records of the company were kept in an archaic fashion. There was no bookkeeper. No officer of the company had a desk. Such records as were kept were kept by Squarey in the machine shop on a drafting board. Squarey, the secretary-treasurer, did not

want to lose track of the debt altogether, but desired to keep some memorandum entry of it for the future. Under his method of keeping the records, he feared that a mere charging off would cause the account to be lost sight of, so he attempted to effect a charge off by setting up a reserve, in the amount of this account, against the earnings for the year. The actual process of setting up this reserve, as herein outlined, did not take place until some time after January 1, 1921, probably in January of that year.

6. Nothing was realized on this account until the year 1924, when the taxpayer received $249.81 in the settlement of the bankruptcy proceedings. The amount so recovered in 1924 was reported as income for that year. The entire amount of the debt was charged off as hereinabove set out, and no deduction was taken for it, or any portion of it, in any year other than 1920.

### DECISION.

The tax should be computed by allowing as a deduction the account of the International Money Machine Co. in the amount of $4,031.36. Final determination will be settled on 15 days' notice, under Rule 50. *Appeals of Huning Mercantile Co.*, 1 B. T. A. 130; *Charles A. Collin*, 1 B. T. A. 305, 308.